# MRS. CARL (MARIE) REICHERT v. VICTORY GRANITE COMPANY AND ANOTHER. STATE TREASURER, CUSTODIAN OF THE SPECIAL FUND.

82 N. W. (2d) 497.

April 18, 1957—No. 37,108.

*H. Horace Burry,* for relator.

*Reynolds & McLeod,* for respondents employer and insurer.

*Miles Lord,* Attorney General, and *Robert Latz,* Special Assistant Attorney General, for respondent state treasurer.

NELSON, JUSTICE.

Certiorari for review of decision of the Industrial Commission. The facts are not in dispute. The relator's husband contracted the occupational disease of silicosis on January 4, 1947. As a result he was rendered totally disabled on February 8, 1947, and the disease ultimately caused his death on January 9, 1951. His employer and the insurer both received timely notice.

Relator's husband was paid workmen's compensation under the Workmen's Compensation Act during a period of temporary total disability from February 8, 1947, to April 20, 1949, a period of 114⅔ weeks. He was paid the maximum collectible compensation for which the employer and insurer were liable under the provisions of the escalator clause of M. S. A. 1949, § 176.664,[1] in the sum of $2,750.

---

[1]The escalator clause of § 176.664 reads as follows:

"Compensation is not payable for partial disability from silicosis or asbestosis, except where such partial disability follows a compensable period of total disability. After the effective date of Laws 1943, Chapter 633, in the event of total disability or death from silicosis or asbestosis, compensation is to be paid during a transition period according to the following formula: if such total disability or death results during the first calendar

It appears that the employee left surviving him his wife, Marie Reichert, the relator, and three stepchildren, being Vernon Francis Tracy, born September 4, 1932; Larry James Tracy, born June 14, 1934; and James Peter Tracy, born March 25, 1937. Following the death of relator's husband, the employer and insurer paid dependency compensation to the dependent survivors from January 9, 1951, to June 14, 1952, on which date the oldest child became 18 years of age, and thereafter dependency compensation was paid weekly to February 12, 1954. The aforesaid payments amounting to $4,650 were likewise made at the maximum collectible rate pursuant to the escalator clause of § 176.664 and other supplementary and applicable provisions of the Workmen's Compensation Act covering dependency.

It appears that the total payments, dependency and otherwise, for partial total disability and death due to the contraction of the occupational disease of silicosis were made without interruption until the maximum collectible compensation under § 176.664 was reached in the sum of $7,400. Upon reaching what has been found to be the maximum collectible compensation, payments were promptly discontinued.

It is not disputed that relator is a dependent and that James Peter Tracy, who is physically and mentally incapacitated from earning, is also a dependent although past the age of 18 years.

The referee, following a hearing, determined that the widow, for herself and said dependent James Peter Tracy, was entitled to and accordingly awarded compensation at $20 per week from the special

month after the effective date of Laws 1943, Chapter 633, the total compensation payable for such disability or death, or both shall not exceed $500; thereafter, the limit on the total compensation payable for total disability or death increases at the rate of $75 per month, in each case such total is limited, pursuant to such formula, according to the month in which incapacity or death occurs. Such progressive increase in the limits to the aggregate compensation and benefits for disability or death continue until the limits upon such benefits, as provided in the workmen's compensation act, is reached."

compensation fund, but on appeal to the Industrial Commission, the widow was denied any further compensation.

■ Section 176.664 became effective by L. 1943, c. 633, § 10. This section was amended, eliminating the escalator clause, by L. 1951, c. 454. The amendment was approved April 18, 1951. The escalator clause therefore governed compensation payments made to relator's husband and was effective on the date of his death January 9, 1951. We held in Carroll v. State, 242 Minn. 70, 64 N. W. (2d) 166, that the compensation law in effect at the time of the employee's death governs the rights of the dependents to death benefits.

In Skjefstad v. Red Wing Potteries, Inc. 240 Minn. 38, 60 N. W. (2d) 1, we held that the law in effect at time of death of employee governed in determining maximum benefit to which his widow was entitled, and the statute thereafter adopted was not applicable. In Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. (2d) 735, we said that the amount of death benefits to which an employee's dependents are entitled is governed by the law in effect at the time of the employee's death. Rights of dependents to recover death benefits are separate and distinct from rights of an employee to recover compensation or medical or hospital benefits during his lifetime. Carroll v. State, *supra.*

We have adopted the theory regarding the application of the Workmen's Compensation Act that dependents of a workman have a pecuniary interest in the normal continuation of his life and the purpose of the act is to compensate them for loss they suffer when he is accidentally killed or dies from compensable injuries. Todeva v. Oliver Iron Min. Co. 232 Minn. 422, 45 N. W. (2d) 782. The rule therefore seems clear that the law in effect at the time of death of employee governs in determining maximum benefit to which his widow and other dependents are entitled, likewise any statute adopted or amendment made effective thereafter would not be applicable to the proceedings had herein. Skjefstad v. Red Wing Potteries, Inc. *supra.*

■ Section 176.664, while the escalator clause remained in effect, provided that initially the total compensation payable for total dis-

ability or death or both due to the disease of silicosis should not exceed $500; that thereafter, the limit on the total compensation payable for total disability or death was to be increased at a rate of $75 per month; and that in each case such total was limited, pursuant to such formula, according to the month in which incapacity or death occurred. The escalator clause further provided that "Such progressive increase in the limits to the aggregate compensation and benefits for disability or death continue until the limits upon such benefits, as provided in the workman's compensation act, is reached."

It should also be noted that M. S. A. 176.66, providing how occupational diseases shall be regarded, provides in subd. 1 that the disablement of an employee resulting from an occupational disease, except where specifically otherwise provided, is to be treated as the happening of an accident within the meaning of the workmen's compensation law and the procedure and practice provided applies to all proceedings under that section except where specifically otherwise provided therein. It further provides that, when used in that section, "disability" means the state of being disabled from earning full wages at the work at which the employee was last employed and that "disablement" means the act of becoming so disabled.

Section 176.66, subd. 2, provides in part:

"If an employee is disabled or dies and his disability or death is caused by a compensable occupational disease, he or his dependents are entitled to compensation for his death or for the duration of his disability according to the provisions of this chapter, except as otherwise provided in this chapter."

M. S. A. 1949, § 176.12, covered the subject of dependents and allowances. Subd. 19 thereof, prescribing rate and limitation of compensation payable as of January 9, 1951, provided as follows:

"The compensation payable in case of death to persons wholly dependent shall be subject to a maximum compensation of $30 per week and a minimum of $15 per week; provided, that if at the time of injury the employee receives wages of $15 or less per week, then the compensation shall be the full amount of such wages per week;

the compensation payable to partial dependents shall be subject to a maximum of $30 per week and a minimum of $15 per week; provided, that if the income loss of the said partial dependents by such death is $15 or less per week, then the dependents shall receive the full amount of their income loss; this compensation shall be paid during dependency, *but shall not exceed $10,000 in case of a dependent wife, child, children, or orphan,* and shall not exceed 300 weeks in case of any other dependent, payments to be made at the intervals when the wage was payable, as nearly as may be." (Italics supplied.)

M. S. A. 1949, § 176.13, dealt with disability or death resulting from accident; increase of previous disability; and special compensation fund. Subsection (c) thereof, in the form effective on the date of death in these proceedings, provided in part:

"All widows with a dependent child or children, or with a child or children over 18 years of age physically or mentally incapacitated from earning, and all such children who are orphans, who are now receiving, or who may hereafter become entitled to receive, compensation under section 176.12 for the death of their husband or parent shall, after the maximum collectible compensation has been paid and satisfactory proof thereof filed, receive from the special fund additional compensation, not exceeding $2,500, in the same manner and with the same limitations as is prescribed by section 176.12, except that the maximum weekly compensation shall not exceed $20, until the youngest dependent child attains the age of 18 years or, if over 18 years of age, becomes physically and mentally able to earn, or the additional sum of $2,500 has been fully paid."

The aforesaid § 176.13 also provided for the creation of the special compensation fund.

It should be further noted that said § 176.13 (c) provided that the *maximum collectible compensation* must have been paid under the compensation act but did not state that such compensation shall be $10,000 or any other definite sum.

M. S. A. 1949, § 176.01, recognized occupational disease under subd. 15, as of January 9, 1951, and stated that:

"The words 'occupational disease' mean a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment."

M. S. A. 1949, § 176.11, set forth a general schedule of compensation and provided under subd. 4 that "the total amount payable under this subdivision *shall not exceed $10,000 in any case.* Payments shall be made at the intervals when the wage was payable as nearly as may be." (Italics supplied.)

The relator's position is that she is either entitled to receive additional compensation from the employer-insurer up to a total not to exceed $10,000 and then to receive from the special compensation fund as provided in M. S. A. 1949, § 176.13(c), additional compensation not to exceed $2,500; or in the alternative, if the maximum total collectible compensation has already been paid by the employer-insurer in the sum of $7,400, pursuant to M. S. A. 1949, § 176.664, she is entitled to receive from the special fund additional compensation not exceeding $2,500.

The referee found that relator had been paid the maximum collectible compensation provided under the escalator clause of § 176.664 and therefore became entitled to payment from the special compensation fund under the provisions of § 176.13(c).

The findings and determination of the referee includes findings numbered from I to X inclusive. The referee's finding No. X and his determination pursuant to the findings read as follows:

"The dependent, James Peter Tracy, born March 25, 1937, is physically and mentally incapacitated from earning.

"Now, therefore, it is considered and determined that the widow for herself and dependent, James Peter Tracy, is entitled to and is hereby awarded compensation at $20.00 per week from the special compensation fund, said payments are to be made as provided for within the provisions and limitations of the Workmen's Compensation Act for the State of Minnesota, and, further, said payments shall commence as of February 13, 1954."

On appeal the commission adopted referee's findings numbered I, II, III, IV, V, VI, VII, and X as being in accord with the evidence and the law as the findings of the commission. The commission, however, being of the opinion that findings No. VIII and IX were not in accord with the evidence and the law in the case, vacated said findings and in lieu thereof made the following findings and determination:

## "VIII.

"That following the death of the employe on January 9, 1951, said employer and insurer paid dependency compensation for $71\frac{5}{6}$ weeks at the rate of $30.00 per week from January 9, 1951 to June 14, 1952, on which date the oldest child became eighteen years of age, in the sum of $2,155.00 and thereafter continued to pay compensation at the rate of $28.75 per week for a period of $86\frac{5}{6}$ weeks from June 15, 1952 to February 12, 1954, in the sum of $2,495.00 which payments together with the payments of compensation to the deceased during his lifetime in the sum of $2,750.00 constitutes a total payment of compensation in the sum of $7,400.00.

## "IX.

"That under the escalator provisions of the law in Minn. 1949, Section 176.664 in effect on the date of death of the employe herein on January 9, 1951, the maximum collectible compensation was the sum of $7,400.00."

Thereupon the commission denied relator's petition by concluding as follows:

"Now, therefore, it is considered and determined that the petition filed hereon on April 15, 1955, be, and the same is hereby in all things denied."

In effect it vacated the findings and determination of the referee and denied to relator and her dependent the right to receive compensation from the special compensation fund as provided under § 176.13 (c).

That the Workmen's Compensation Act, within practical limits, is to be liberally construed has been so often expressed in the decisions of this court that it does not need at this time either restatement

or citation to support it. We take it that the provisions of the Workmen's Compensation Act, if they are to be applied liberally as intended, must be considered supplementary to each other; that they must be construed together whenever reasonable and practical and not violative of law or statutory construction in order to give effect to the purpose for which the act was originally enacted and subsequently broadened in scope and improved upon.

Both sides have cited and relied upon the case of Skjefstad v. Red Wing Potteries, Inc. 240 Minn. 38, 60 N. W. (2d) 1. Employer, insurer, and the state appear to take the position that there can be no recovery here from the special compensation fund unless compensation payments have been made up to but not to exceed the sum of $10,000 and that, since the maximum collectible compensation under § 176.664 was limited under the escalator clause in effect January 1, 1951, to $7,400, relator widow and her dependent must content themselves with that amount. In the Skjefstad case the court dealt with a situation which resulted in a settlement based upon compromise. Any reference which was made in that case to the $10,000 limit in compensation payments is in no manner conclusive here. The reference therein made was for illustrative purposes in determining how the court reached its conclusion. It did not directly deal with the exact issue here involved.

It is plain from the provisions of the escalator clause that, had that clause remained a part of § 176.664, the time would have come when payment under its terms would have reached the limit of *not to exceed $10,000,* the same limit or maximum which then applied to compensation payments. It is difficult to see how anyone, had there been no amendment and had the maximum of payments been reached under the escalator clause of § 176.664, could successfully contend that dependents would then be denied the relief provided under § 176.13(c) or the right to receive additional compensation from the special fund. The Workmen's Compensation Act does not indicate that it provides any other rule for the protection of dependents than the provisions set forth in § 176.13(c).

■ It is our considered opinion that the relator widow and her dependent after having been paid, including the compensation received by employee before his death, the maximum collectible compensation provided under the escalator clause of § 176.664, qualified as proper applicants for payment from the special compensation fund and that they are now entitled to be paid according to the applicable provisions of § 176.13(c).

Findings and a determination which conforms to this opinion are in order. The relator is allowed $250 attorney's fees in this court.

Reversed and remanded.